IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00841-WJM-MEH

RAY ANTHONY SMITH,

    Plaintiff,

v.

CHARLEEN CROCKETT,
DEAN WILLIAMS,
SEAN PRUITT,
GINGER MIDDLETON, and
CARLOS LOPEZ,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiff Ray Anthony Smith, a *pro se* prisoner, alleges violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and his constitutional rights under the First Amendment. ECF 86. He brings his constitutional claims pursuant to 42 U.S.C. § 1983 in his Second Amended Complaint ("SAC") against Defendants in their individual and official capacities. *Id*. Before the Court is Defendants' Motion for Summary Judgment (ECF 168) and Plaintiff's Motion for Summary Judgment (ECF 171). For the following reasons, the Court respectfully recommends denying in part and granting in part Defendants' Motion and denying Plaintiff's Motion.

## BACKGROUND

While this case was referred to then-Magistrate Judge Nina Y. Wang, she issued a recommendation on a motion for a preliminary injunction in which she explained the basic background of this case:

> Plaintiff Ray Anthony Smith ("Mr. Smith" or "Plaintiff") is an inmate currently in the custody of the Colorado Department of Corrections ("CDOC") and housed at the Arkansas Valley Correctional Facility ("AVCF"). [Doc. 86 at 2]. Mr. Smith is Muslim and has practiced Islam for 25 years. [*Id.* at 20, 25]. Mr. Smith keeps a halal diet for religious reasons, and his decision to keep a halal diet is motivated by his sincerely held religious beliefs. [*Id.* at 12, 20]. Plaintiff initiated this federal lawsuit on March 27, 2020, [Doc. 1], and Plaintiff filed his Second Amended Complaint on March 3, 2021. [Doc. 86]. In the Second Amended Complaint, Mr. Smith alleges, *inter alia*, that Defendants have wrongfully interfered with his ability to practice his religion by wrongfully canceling his halal diet. *See generally* [*id.*].
>
> On March 18, 2021, the currently named Defendants—Dean Williams, Sean Pruitt, Charlene Crockett, Carlos Lopez, and Ginger Middleton (the "CDOC Defendants")—filed a Motion to Dismiss. *See* [Doc. 87]. The presiding judge, the Honorable William J. Martínez, referred the Motion to Dismiss to the undersigned for Recommendation, [Doc. 97], and this court respectfully recommended that the Motion to Dismiss be granted in part and denied in part. [Doc. 102 at 68]. Relevant here, this court found that Mr. Smith had sufficiently stated the following claims against the CDOC Defendants: (1) a free-exercise claim under the First Amendment, [*id.* at 25]; (2) a claim under . . . RLUIPA[], [*id.* at 29]; and (3) a retaliation claim under the First Amendment. [*Id.* at 34]. Judge Martínez adopted the undersigned's Recommendation. *See* [Doc. 107]. As a result, Plaintiff's First Amendment and RLUIPA claims against the CDOC Defendants remain pending.

ECF 124 at 2–3 (footnote omitted).

Then-Magistrate Judge Wang's recommendation, which District Judge Martinez adopted in its entirety, also recommended the dismissal of Plaintiff's RLUIPA claim insofar as it is raised against Defendants in their individual capacities but declined to recommend the dismissal of Plaintiff's free exercise and retaliation claims on qualified immunity grounds. ECF 102 at 17, 19, 39, 40; 107 at 4, 10. In sum, Plaintiff's RLUIPA claim remains against Defendants in their official capacities for equitable relief, Plaintiff's free exercise claim remains against Defendants in their individual

2

capacities for monetary damages and in their official capacities for equitable relief, and Plaintiff's retaliation claim remains against Defendant Lopez in his individual capacity for monetary damages and in his official capacity for equitable relief. ECF 107 at 2.

## **FINDINGS OF FACT**

Cross motions for summary judgment are examined under the usual Rule 56 standards, with a court viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Denver Inv. Advisors, LLC v. St. Paul Mercury Ins. Co.*, No. 17-CV-00362-MEH, 2017 WL 3130923, at *1 (D. Colo. July 24, 2017). The following facts are undisputed unless otherwise cited.

**I.      Halal Diet**

1. Plaintiff has been incarcerated at the AVCF since July 24, 2017. ECF 168-2 at 8.

2. For the entirety of his incarceration and as far back as 1996, Plaintiff has practiced the religion of Islam. *Id.* at 14.

3. Plaintiff keeps a halal diet for religious reasons.

4. AVCF provides accommodations for Muslim inmates to keep a halal diet, so long as they sign a Religious Diet Participation Agreement ('RDPA"). ECF 168-5 at 4, 9, 10. The RDPA prohibits inmates receiving a religious diet accommodation from purchasing, possessing, or consuming food that "is not permitted under [their] religious diet." ECF 168-2 at 71.

5. As of June 22, 2016, the Colorado Department of Corrections defines halal food as: "Free of, and not made of, or containing any part of substance taken or extracted from animals which are forbidden (HARAM) to be consumed by Muslims, according to Islamic laws. Not containing any substance, which is declared as filth according to Islamic Laws. Not prepared, processed, produced or manufactured using utensils, equipment and / or machinery which are not free from filthy

3

substances as directed by Islamic laws. During preparation, processing or storage, it should not come into contact or be in close proximity with any food that does not fulfill the requirements as stipulated, or any substance declared as being filth according to Islamic Law." ECF 168-1 at 3.

6.      Under Administrative Regulation 1550-15, "[i]ncidents of non-compliance, as outlined on . . . Religious Diet Participation Agreement will be recorded in [] Incident Reporting System or on . . . Religious Diet Non-Compliance Report. For the first incident of non-compliance, a copy of the [] Incident Report will be given as the warning and will be sent through inter-department mail given to the participant using. . . Religious Diet Non-Compliance Report. The second offense, within a one year time period, will result in cancellation of the diet for one year from the date of notification." ECF 168-5 at 11.

7.      On June 29, 2018, Plaintiff signed a RDPA for a halal diet at AVCF. ECF 168-2 at 71. Thereafter, Plaintiff was eligible to purchase halal food items from the canteen with his own funds.

8.      On September 12, 2019, Plaintiff purchased Buffalo Wing Chips, which were not marked "H" for halal. ECF 168-2 at 88. Then, on November 7, 2019, Plaintiff purchased Buffalo Wing Chips and Nacho Tortilla Chips, which were also not marked "H" for halal. ECF 168-2 at 32, 90.

9.      Defendant Lopez reviewed Plaintiff's purchases and noted possible violations of Plaintiff's RDPA in an incident report for purchases of these food items. ECF 168-4 at 4.

10.     Defendant Lopez does not have the authority to make a final determination on whether a inmate violated his or her RDPA. *Id.*  However, Defendant Crockett does have authority to make such determinations. ECF 168-5 at 2

11.     On December 3, 2019, Defendant Crockett sent Plaintiff a warning letter for his alleged violation of his RDPA. ECF 168-2 at 107. The letter indicated that Plaintiff could dispute the violation within thirty days. *Id.*

4

12. On November 21, 2019 Plaintiff again purchased Buffalo Wing Chips, which were not marked "H" for halal. ECF 11 at 44; 168-2 at 34, 91. Then, on December 12, 2019, Plaintiff purchased Roast Beef and Gravy, which was not marked "H" for halal but did bear a crescent moon logo. ECF 11 at 45, 48; 168-2 at 35, 45-46. Finally, on December 18, 2019, Plaintiff purchased Microwave Kettle Corn, Sizzlin Sweet Mix, and Riesen Chocolate Caramel, none of which were marked "H" for halal. CF 168-2 at 92.

13. The Buffalo Wing Chips purchased by Plaintiff on September 12, 2019, November 7, 2019, and November 21, 2019 were marked "K" for Kosher and designated stock number "3210." ECF 168-2 at 88, 90, 91.

14. The Nacho Tortilla Chips purchased by Plaintiff on November 7, 2019 were designated stock number "3190." *Id.* at 90.

15. Defendant Crockett received a second incident report from Defendant Lopez on January 15, 2020, regarding Plaintiff's later purchases of non-halal marked items, including purchases of Buffalo Wing Chips on November 21, 2019, purchases of Roast Beef and Gravy on December 12, 2019, and purchases of Microwave Kettle Corn, Sizzlin Sweet Mix, and Riesen Chocolate Caramel on December 18, 2019. ECF 168-2 at 105; 168-4 at 4-5. Thereafter, on January 21, 2020, Defendant Crockett terminated Plaintiff's religious diet for one year. ECF 168-2 at 36, 104. The termination letter indicated that Plaintiff could dispute the violation within thirty days. *Id.* at 104.

16. Plaintiff wrote Defendant Crockett a letter disputing his violations. *Id.* at 112-13. Defendant Crockett's response denied Plaintiff's request to reinstate his halal diet. *Id.* at 115.

17. Defendant Crockett never consulted either Defendant Pruitt or Defendant Williams in making her determination that Plaintiff violated his RDPA. ECF 168-5 at 3.

18.     Defendant Middleton's job responsibilities never included designating, or supervising the designation of, food items as halal. ECF 168-3 at 2. Further, Defendant Middleton's job responsibilities did not include assuring the accuracy of food items marked "H" for halal. *Id.*

19.     As of January 7, 2022, Nacho "Torilla [sic]" Chips, listed alongside the number "3190," and Buffalo Chips, listed alongside the number "3210," are "Approved Halal Food Items." ECF 157 at 13; 168-4 at 35.

**II.     Gastroesophageal reflux disease ("GERD") Diet**

20.     Plaintiff was diagnosed with GERD in 2005. ECF 168-2 at 47. At some point, Plaintiff was placed on a GERD medical diet at AVCF. *Id.* at 50. The GERD diet generally limits spicy foods, onions, peppers, tomato or tomato products, chocolate, and some higher-fat foods. *Id.* at 53.

21.     AVCF provides accommodations for inmates with medical conditions who require a specialized diet. ECF 168-5 at 7, 8.

22.     On January 15, 2020, Defendant Lopez noted in an incident report that Plaintiff violated his GERD diet by ordering food items with spices in them. ECF 168-2 at 105.

23.     According to AR 1550-15 effective May 1, 2019, "[a] medical diet and/or supplemental snack can only be cancelled by an authorized health care provider." ECF 168-5 at 8, 19.

## LEGAL STANDARD

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit

under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). Where,

as here, the Court is presented with cross-motions for summary judgment, the Court "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 907 (10th Cir. 2016) (internal quotations omitted).

## ANALYSIS

In Defendants Motion, they argue that Plaintiff cannot present sufficient evidence to support his claims for violations of the First Amendment and RLUIPA. ECF 168 at 11, 17, 20. Alternatively, Defendants argue that these claims must at least fail for Defendants Middleton, Pruitt, and Williams. *Id.* at 15, 16, 19.

In Plaintiff's Motion, he argues that the termination of his halal diet prevented him from exercising his religion, violating his rights under the First Amendment and RLUIPA as a matter of law. ECF 171 at 8. However, the parties dispute whether the termination of Plaintiff's religious diet was wrongful. ECF 178 at 1; 181 at 2. Plaintiff also argues that his medical diet was terminated in retaliation for filing grievances after his halal diet was terminated. ECF 171 at 1, 9; 177 at 3.

The Court will address both motions in tandem.

### I.   Free Exercise & RLUIPA Claims

The First Amendment and RLUIPA prohibit the government from substantially burdening a person in the free exercise of their religion. *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007); *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010); 42 U.S.C. § 2000cc-1(a). The Tenth Circuit unequivocally recognizes that "prisoners have a constitutional right to a diet conforming to their religious beliefs." *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002). Similarly, denial of a halal diet may substantially burden the religious exercise of an inmate under RLUIPA. *Abdulhaseeb*, 600 F.3d at 1317.

An inmate's right to free exercise may be constitutionally impinged, however, by a prison regulation that is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Russell v. Wilkinson*, 79 F. App'x 175, 177 (6th Cir. 2003) ("An inmate's right to freely exercise his religion may be subject to reasonable restrictions while he is incarcerated."). A RLUIPA violation may also be allowed so long as the government shows "a compelling government interest" and that the burden "is the least restrictive means of furthering that compelling government interest." *Abdulhaseeb*, 600 F.3d at 1318; 42 U.S.C. § 2000cc-1(a). "[A] prison policy that terminates an inmate's participation in a religious diet program when he violates the diet requirements does not deny his right to religious freedom." *Gibson v. Zavaras*, No. 09-cv-02328-WYD-KLM, 2010 WL 2543584 (D. Colo. Jan. 22, 2010), *report and recommendation adopted*, 2010 WL 2543583, at *4 (D. Colo. June 22, 2010).

At the outset, Defendants argue that a halal diet does not require Plaintiff to consume the items he allegedly wrongfully purchased, and that nonetheless, Defendants are entitled to qualified immunity. ECF 168 at 15, 17. However, the right to eat food not designated "H" for halal is not the right asserted by Plaintiff. He alleges that his halal diet was wrongfully terminated, and that the termination substantially burdened his free exercise. *See* ECF 86 at 5. As then-Magistrate Judge Wang has already held in this case:

> The crux of Mr. Smith's claim is that the CDOC Defendants have terminated his halal diet, which has imposed a substantial burden on his religious practice, and that this termination was wrongful or without a legitimate basis. *See generally* [Doc. 86]. The court cannot narrowly define the constitutional right at issue here as the right to be free from a prison's two-strikes policy or the right to have an accurate classification of halal food items for purchase where these issues are merely contributory to the actual alleged constitutional violation: a violation of Plaintiff's constitutional right to keep a religious diet. *See* [*id.* at 9 (asserting that Defendants' decision to "wrongfully discontinue" his religious diet violated his free-exercise rights); *id.* at 12 (asserting that his free-exercise rights were violated when he was required to eat substituted meals instead of halal meals)]. Indeed, the court finds that the "general constitutional rule already identified in the decisional law," i.e., the right to a religious diet, "appl[ies] with obvious clarity to the specific conduct in question."

> *Stewart*, 701 F.3d at 1330. . . . "In the Tenth Circuit, an inmate's First Amendment right to a diet conforming to his sincerely held religious beliefs has been clearly established since at least 2002, long before the events forming the basis of Plaintiff's complaints." *Wiggins*, 2015 WL 13665442, at *9; *see also Hancock*, 2018 WL 6605839, at *6 ("[I]t is clearly established Tenth Circuit law that prisoners have a constitutional right to a diet conforming to their religious beliefs, including free kosher meals.").

ECF 102 at 37–39 (footnote omitted).

Accordingly, the Court finds Defendants' qualified immunity arguments unpersuasive as to Defendant Crockett, who terminated Plaintiff's halal diet. *See* ECF 168-2 at 36, 104. Defendants also argue that Defendants "reasonably relied" on the food items' halal designations, but only Defendant Lopez testified that he relies entirely on the "H" designation to determine whether a specific food item is halal. ECF 168-4 at 4; 179 at 7. And Defendant Lopez made clear in his affidavit that his determinations of what is or is not halal were not consequential in the termination of Plaintiff's halal diet. ECF 168-4 at 5.

It is undisputed that Plaintiff was denied a halal diet following two alleged violations of his RDPA. ECF 168-2 at 107. In general, Plaintiff does not challenge the RDPA, but rather contends that he never violated it.[1] ECF 177 at 8. Plaintiff also asserts that "Charleen Crockett admitted that she wrongfully terminated Plaintiff's Halal diet," but cites to a deposition which establishes just the opposite. *See* ECF 171 at 8. He quotes a letter from Defendant Crockett but does not cite to anywhere in the record. ECF 177 at 11. Plaintiff also argues that items marked "K" for Kosher should be considered halal. ECF 171 at 8. However, only one of the food items Plaintiff purchased allegedly in violation of his halal diet, the Buffalo Wing Chips, was marked "K" for Kosher. *See* ECF 168-5 at 25-30.

---

[1] Presumably in the alternative, Plaintiff also argues that the RDPA "allows CDOC officials to wrongfully dictate a religious believer's religious dietary laws." ECF 177 at 15.

The parties dispute whether Plaintiff violated the RDPA, leaving a genuine issue of material fact to be properly decided by a jury. Plaintiff states that the items he purchased do conform to the halal diet, cites passages of the Qur'an, and identifies the ingredients of the items he purchased allegedly in violation of the RDPA. ECF 177 at 10-11. "[I]t isn't for judges to decide whether a claimant who seeks to pursue a particular religious exercise has 'correctly perceived the commands of [his] faith' or to become 'arbiters of scriptural interpretation.'" *Yellowbear v. Lampert*, 741 F.3d 48 (10th Cir. 2014) (quoting *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 716 (1981)). On the other hand, Defendants provides evidence that none of the items flagged by Defendant Lopez and reviewed by Defendant Crockett were marked with an "H" for halal. ECF 168-4 at 59-63; 168-5 at 25-27. Appreciating the genuine dispute of material fact as to whether Plaintiff violated the RPDA, the Court recommends denying Plaintiff's and Defendants' Motions for Summary Judgment for Plaintiff's Free Exercise and RLUIPA claims.

## II. Retaliation Claim

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). However, to establish a First Amendment retaliation clam, Plaintiff must show "(1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct." *Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic, Kan.*, 582 F.3d 1155, 1165 (10th Cir. 2009). Here, Plaintiff alleges that Defendant Lopez retaliated against him by submitting incident reports that noted a possible violation of Plaintiff's medical diet. ECF 171 at 6; 177 at 8. Plaintiff

11

asserts that his medical diet was also wrongfully terminated due to Defendant Lopez's incident reports. ECF 86 at 27. However, Defendant Crockett states in her deposition that when she receives an incident report, she pulls and reviews that inmate's food item purchases herself. ECF 168-5 at 2. Though this District has recognized that "[c]onduct violations [reports] cannot be deemed retaliatory when they are issued for actual violations of prison rules," those are not the facts of the present case. *Bunner v. Koch*, No. 08-CV-00171-WYD-KLM, 2009 WL 798550, at *12 (D. Colo. Jan. 30, 2009*), report and recommendation adopted*, 2009 WL 798539 (D. Colo. Mar. 24, 2009) (quoting *Moots v. Lombardi*, 453 F.3d 1020, 1023 (8th Cir. 2006)). Plaintiff disputes that he violated prison rules. *See* ECF 171 at 7.

Next, Defendant Lopez argues he is entitled to qualified immunity. ECF 168 at 22. Government officials like Defendant Lopez are entitled to qualified immunity so long as their conduct does not violate another's clearly established constitutional rights. *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012). Here, Plaintiff asserts the right not to have false incident reports filed against him in retaliation. ECF 86 at 16. However, the right to be free from inconsequential, allegedly false incident reports is not clearly established. *See Martley v. Basehor, Kansas, City of*, 537 F. Supp. 3d 1260 (D. Kan. 2021) (applying qualified immunity to a "First Amendment retaliation claim based on the instigation of a criminal investigation"). Because Defendant Lopez lacked the authority to terminate either Plaintiff's religious or medical diet, at most his incident report instigated an investigation into Plaintiff's food purchases. ECF 168-4 at 5, 19. Thus, the Court finds that Defendant Lopez is entitled to qualified immunity and recommends granting summary judgment for Plaintiff's retaliation claim as to Defendant Lopez.

**III.     Defendants Middleton, Pruitt, and Williams**

Notwithstanding the general dispute as to whether Plaintiff violated his RDPA, Defendants argue that it is undisputed Defendants Middleton, Pruitt, and Williams did not personally participate in the termination of Plaintiff's halal diet. ECF 168 at 15.  In response, Plaintiff contends that Defendant Williams is liable as the Executive Director of the Colorado Department of Corrections for signing and promulgating the RDPA; Defendant Pruitt is liable because he failed to ensure the actions of Defendant Lopez complied with relevant laws; and Defendant Middleton is liable for failing to ensure incident report procedures were followed.  ECF 177 at 13, 16, 17. However, Defendants correctly state that individual liability attaches under Section 1983 only where a Defendant was personally involved in the alleged constitutional violation, and not merely supervising or managing the staff who were personally. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("As a general matter, § 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation.").

It is undisputed that Defendant Crockett made the final decision to terminate Plaintiff's religious diet, and that she did so without the input or participation of Defendants Middleton, Pruitt, or Williams. ECF 168-5 at 3. Plaintiff never argues that Defendants Middleton and Pruitt had more than a cursory, passive role in the termination of his halal diet. *See* ECF 177 at 16-19. Additionally, to the extent Plaintiff argues that he did not violate the RDPA, Defendant Williams' alleged participation in creating a policy or custom that violated his constitutional rights is not relevant. *Id.* at 13. Plaintiff primarily argues that he did not violate the RDPA, and not that the RDPA itself violated his constitutional rights. *Id.* at 8-11, 20. Indeed, the RDPA encourages those

with religious convictions to avoid purchasing food items that would violate the mandates of their religion. ECF 168-2 at 71. Therefore, the Court recommends granting summary judgment for Plaintiff's free exercise claim against Defendants Middleton, Pruitt, and Williams in their individual capacities. The Court has already dismissed Plaintiff's RLUIPA claim against Defendants Middleton, Pruitt, and Williams in their individual capacities in a prior order. ECF 102 at 17; 107.

## CONCLUSION

Accordingly, the Court respectfully recommends that Defendants' Motion [filed October 3, 2022; ECF 168] be **granted in part and denied in part** and Plaintiff's Motion [filed October 7, 2022; ECF 171] be **denied**.[2]

Respectfully submitted this 18th day of January, 2023, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).