IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 20-cv-0841-WJM-MEH

RAY ANTHONY SMITH,

     Plaintiff,

v.

CHARLEEN CROCKETT,
DEAN WILLIAMS,
SEAN PRUITT, and
GINGER MIDDLETON,

     Defendants.

## ORDER DENYING PLAINTIFF'S VARIOUS MOTIONS REGARDING ENFORCEMENT OF SETTLEMENT AGREEMENT

     This matter is before the Court on *pro se* Plaintiff Ray Anthony Smith's February 24, 2025 Letter (ECF No. 272), which the Court construed as a Motion to Enforce Settlement Agreement (ECF No. 273), as well as his subsequent Motion for Status Report on Defendant's Progress to Enforce Material Terms of Settlement Agreement at ECF No. 272 (ECF No. 277) (each a "Motion," together the "Motions").  Defendants Charleen Crockett, Dean Williams, Sean Pruitt, and Ginger Middleton filed a response to each Motion.  (ECF Nos. 274, 280.)  At the Court's direction, the parties also submitted supplemental briefing limited to "the issue of whether the Court retains jurisdiction over the enforcement of the parties' settlement agreement."  (ECF Nos. 282, 284, 285.)

     For the reasons explained below, the Motions are denied.

## I. BACKGROUND

Smith is presently incarcerated in the Arkansas Valley Correctional Facility ("AVCF"), a facility managed by the Colorado Department of Corrections ("CDOC"). (ECF No. 86 at 4–27.)  He brought this action against Defendants in March 2020, asserting violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and his constitutional rights under the First Amendment based on Defendants' alleged wrongful termination of his religious diet.  (*Id.*)

In July 2024, the parties reached a resolution of Smith's remaining claims in the action.  (ECF Nos. 215, 258.)  The parties' subsequently filed a Stipulated Motion to Dismiss the Case with Prejudice ("Stipulated Motion"), which stated:

> 1.   On July 10, 2024, the parties engaged in a settlement conference and agreed to settle all remaining claims.  []
>
> 2.   The settlement agreement has now been completed.
>
> 3.   Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), the parties hereby stipulate to the dismissal of the above-captioned case with prejudice in its entirety, with each party to bear its own costs and attorneys' fees.

(ECF No. 262.)  The Clerk accordingly terminated the action.  (ECF No. 263.)

Since that time, Smith has asked the Court to intervene in the implementation of the parties' settlement agreement in various ways.  (ECF Nos. 264, 269, 272, 274.)  Currently at issue are Smith's requests (1) that the Court impose "the balance of $1,000 a day for 204 days for Non-Compliance of the Material Settlement Agreement," based in substantial part on Defendants' alleged failure to add some or all of Smith's proposed halal food items to the canteen list, and (2) for "a Status update on the Defendants progress of enforcing the Terms of Settlement Agreement."  (ECF Nos. 272, 274.)

## II. ANALYSIS

A.     **Jurisdiction to Enforce Settlement Agreement**

Upon its initial review of the Motions, the Court's principal concern was that it no longer retained jurisdiction to enforce the parties' settlement agreement following the stipulated dismissal of this action. *See 1mage Software, Inc. v. Reynolds & Reynolds Co.,* 459 F.3d 1044, 1048 (10th Cir. 2006) ("Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'" (quoting *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 501 (2006)). The parties' supplemental briefing confirms the Court's suspicion that it lacks jurisdiction.

Ordinarily, "once the parties to a lawsuit have settled and the district court has dismissed the case, the district court does not have ancillary jurisdiction to enforce the parties' settlement agreement." *Morris v. City of Hobart,* 39 F.3d 1105, 1110 (10th Cir. 1994) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 380–81 (1994)). "A district court can, however, retain jurisdiction over a settlement agreement if the order of dismissal shows an intent to retain jurisdiction or incorporates the settlement agreement." *Id.*

Here, the parties' Stipulated Motion was filed pursuant to Rule 41(a)(1)(A)(ii). Thus, there was no order of dismissal at all. Rather, the case was merely terminated in accordance with the parties' Stipulated Motion. *See* Fed. R. Civ. P. 41(a)(1)(A) ("the plaintiff may dismiss an action without a court order by filing . . . (ii) a stipulation of dismissal signed by all parties who have appeared"). For that same reason, there was naturally no "order of dismissal show[ing] an intent to retain jurisdiction or incorporat[ing]

3

the settlement agreement." *Morris v. City of Hobart,* 39 F.3d at 1110. Nor is the Court convinced that the Stipulated Motion's mere reference to the fact that a settlement was reached is sufficient to establish the parties' intent that the Court retain jurisdiction over the settlement agreement's enforcement. *See Kokkonen,* 511 U.S. at 381 ("The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order."); *see also McKay v. U.S.,* 207 F. App'x 892, 895 (10th Cir. 2006) (concluding the district court lacked ancillary jurisdiction where "[t]he [dismissal] order did refer to the settlement agreement and did state that dismissal was appropriate because the terms and conditions of the agreement had been fully performed" but "did not order the parties to comply with the terms of the agreement and [] did not condition dismissal upon future compliance").

Accordingly, "[w]ithout reservation by the court, ancillary jurisdiction is unavailable to enforce a settlement agreement; there must be an independent basis for federal jurisdiction." *Morris,* 39 F.3d at 1110–11 (citing *Kokkonen,* 511 U.S. at 381–82). This, too, appears to be lacking.

There is no basis for diversity jurisdiction, as both parties are citizens of Colorado. 28 U.S.C. § 1332. Nor does federal-question jurisdiction exist over the enforcement of the settlement agreement's terms, because Smith sought to vindicate a federal right in the merits of this underlying dispute. *See Morris,* 39 F.3d at 1108, 1111–12 (finding the district court lacked an independent jurisdictional basis to enforce a settlement agreement arising from a Title VII action). Rather, Smith's Motions implicate "a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit. No federal statute makes that connection (if it constitutionally could)

4

the basis for federal-court jurisdiction over the contract dispute." *Kokkonen,* 511 U.S. at 381. Thus, "federal jurisdiction will lie only if resolution of this breach of contract claim requires resolution of a substantial question of federal law." *Morris,* 39 F.3d at 1111.

In examining this question, the Court "focus[es] on whether Congress evidenced an intent to provide a federal forum." *Id.* The Court finds "no suggestion" in either RLUIPA or 42 U.S.C. § 1983 "that Congress intended to confer federal question jurisdiction over contract disputes arising out of private settlements." *Morris,* 39 F.3d at 1111; *see also West v. Hoy,* 126 F.4th 567, 570, 575 n.6 (7th Cir. 2025) (observing the district court lacked jurisdiction to enforce a settlement agreement resolving a RLUIPA claim where it did not expressly retain jurisdiction after dismissing the case or incorporate the settlement agreement into the judgment); *Denver Homeless Out Loud v. Denver, Colo.,* 32 F.4th 1259, 1269 (10th Cir. 2022) (agreeing with the district court "that we lack jurisdiction to enforce the terms" of a settlement agreement resolving a § 1983 suit where the final judgment "neither incorporated the agreement's terms nor expressly retained jurisdiction over the agreement").

For all these reasons, the Court concludes that it lacks any jurisdictional basis to enforce the parties' settlement agreement.

**B.    Rule 60(b)(6)**

Nevertheless, in his supplemental brief, Smith also states he "is seeking relief under Rule 60(b)(6)" because

> it would be an offense of justice to deny relief due to the fact that the matter was presented to the plaintiff outside of the award that the plaintiff was seeking [Judge Hegarty] came during settlement negotiations to not choose more than (10) items to add to the canteen list and Plaintiff chose (7) to make it easier for the defendants to accomplish.

5

(ECF No. 284 at 3.)

Notably, Defendants did not respond to his argument, noting Smith's argument as to Rule 60(b) "goes beyond this Court's order for briefing only on the limited issue of whether the Court retains jurisdiction to enforce the Parties' Settlement Agreement." (ECF No. 285 at 3 n.1.)  That is true.  Nevertheless, Smith is correct to identify Rule 60(b)(6) as potentially relevant.  *See Kokkonen,* 511 U.S. at 378 (distinguishing the fact pattern before it as one where respondents did *not* seek to reopen the dismissed suit under Rule 60(b)(6)).  Thus, for the sake of thoroughness—and particularly because Smith currently proceeds *pro* se—the Court will briefly address this argument as well. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 n. 3 (10th Cir.1991).

"Rule 60(b) relief is extraordinary and may only be granted in exceptional circumstances."  *Lebhan v. Owns,* 813 F.3d 1300, 1306 (10th Cir. 2016) (internal quotation marks omitted).  "The availability of relief under Rule 60(b)(6) is independent of the other enumerated provisions of Rule 60(b), 'is even more difficult to attain[,] and is appropriate only when it offends justice to deny such relief.'"  *Liming Wu v. Bernhardt,* 820 F. App'x 669, 674 (10th Cir. 2020) (quoting *Zurich N. Am. v. Matrix Serv., Inc.,* 426 F.3d 1281, 1293 (10th Cir. 2005)) (internal quotation marks omitted).

The Court understands Smith to argue that it would offend justice for the Court to decline to enforce the settlement agreement's terms because, during settlement negotiations, Smith proposed a more lenient settlement term—his right to suggest seven halal items for inclusion in AVCF's canteen list rather than 10—"to make it easier for the defendants to accomplish."  (ECF No. 284 at 3.)  Unfortunately, however, "things like settlement agreements that have not worked out for the party" are precisely "[t]he

sort of free, calculated, and deliberate choices that may undermine a party's request for Rule 60(b)(6) relief." *Johnson v. Spencer,* 950 F.3d 680, 703 (10th Cir. 2020) (internal quotation marks omitted).

Moreover, there appears no dispute, at this point, that (1) Smith has received the lump sum settlement payment due to him under the settlement agreement and (2) Defendants have adopted some, but not all, of the halal food items Smith asked to be included in AVCF's canteen list. (*See* ECF No. 269 at 1 (acknowledging the "monetary part" of the settlement agreement was completed); ECF No. 284 at 2 (stating "2 of the items" Smith initially proposed "were added but 5 were denied").) On these facts, the Court does not consider the allegations regarding Defendants' alleged breach to be an "extraordinary circumstance" justifying setting aside the stipulated dismissal of this action. *Cf. Bernhardt,* 820 F. App'x at 675 ("the DOI's alleged failure to provide a neutral letter of recommendation . . . might have been grounds for an action to enforce the settlement, but it is no basis for setting aside the stipulated dismissal"); *see also Hernandez v. Peters,* 2000 WL 36739481, at *2–3 (D.N.M. Aug. 30, 2000) (comparing cases suggesting that Rule 60(b)(6) relief might be warranted where a party "repudiate[s] the [settlement] agreement" but not where "one party simply may have failed to fulfill the terms of the settlement agreement" (citations omitted)).

All said, the Court is sympathetic to Smith's frustrations.[1] But he is not without recourse. It is simply that, at this point, "enforcement of the settlement agreement is for

---

[1] It appears, from the Court's point-of-view, that many of Smith's concerns regarding the enforcement of the settlement agreement arise from a lack of communication. The Court encourages the parties to adhere to the settlement agreement's proscribed procedures for communications about proposed additions to AVCF's canteen list, but its lack of jurisdiction prevents it from offering more than this practical advisement.

state courts." *Kokkonen,* 511 U.S. at 382.  The Motions are thus denied.

## III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's Construed Motion to Enforce Settlement Agreement (ECF No. 272) and Motion for Status Report on Defendant's Response to Enforce Settlement (ECF No. 277) are DENIED; and

2. Unless and until the Court directs otherwise, Defendants need not file a response to the Offender Grievance at ECF No. 281, or to any future filings of Plaintiff seeking to enforce the terms of the parties' settlement agreement in this action.

Dated this 11th day of September, 2025.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge